## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lowell Wagoner, | Civil No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| American Accounts & Advisors, Inc., Jari Razskazoff and Mr. Ryans. | |
| Defendants. | **JURY TRIAL DEMANDED** |

### JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

### PARTIES

4. Plaintiff Lowell Wagoner is a natural person who resides in the City of Savage, County of Scott, State of Minnesota, and is a "consumer" as that term

is defined by 15 U.S.C. § 1692a(3), and/or a person affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. §§ 1692k(a).

5.   Defendant American Accounts & Advisors, Inc. (hereinafter "Defendant AAA") is a collection agency operating from an address of 7460 80th Street South, Cottage Grove, MN 55016 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.   Defendant Jari Razskazoff (hereinafter "Defendant Razskoff") is a natural person who was employed at all times relevant herein by Defendant AAA as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7.   Defendant Mr. Ryans (hereinafter "Defendant Ryans") is a natural person who was employed at all times relevant herein by Defendant AAA as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

8.   In or around 2011, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a personal medical debt for his daughters emergency room visit with Emergency Physicians Professional Association ("EPPA"), in the approximate amount of $713.00.

9.   Sometime thereafter, the alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff.

### *November 2, 2011 Collection Call*

10.   On or about November 2, 2011, Defendant AAA's collector, Defendant Razskazoff, contacted Plaintiff's wife by telephone in an effort to collect this alleged debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

11.   This call came from phone number (651) 287-6122.

12.   Defendant Razskazoff immediately asked to speak to Plaintiff.

13.   Upon being connected with Plaintiff, Defendant Razskazoff stated that Plaintiff owed EPPA for an outstanding doctor bill.

14.   Defendant Razskazoff stated that the file number was G52817.

15.   Plaintiff explained that he had never received a bill from EPPA and didn't know what the alleged debt regarding.

16.   Defendant Razskazoff then asked Plaintiff if his address was 3730 26th Avenue, Minneapolis, MN 55406.

17.   Plaintiff stated that this was not his current address nor has he lived there for approximately 10 years.

18.   Plaintiff then gave Defendant Razskazoff his current and correct address.

19.     Defendant Razskazoff then stated that Plaintiff should take care of the alleged debt immediately as it was already affecting Plaintiff's credit.

20.     This statement left Plaintiff confused and angered that his credit report contained an alleged debt Plaintiff knew nothing about.

21.     Defendant Razskazoff stated that Defendants AAA did not purchase the alleged debt but was acting as a collector on behalf of EPPA.

22.     Plaintiff explained that he would not pay Defendants until he found out what the alleged debt was after speaking to his health insurance provider.

23.     Defendant Razskazoff then stated that he could not give Plaintiff a settlement if Plaintiff went through his insurance or directly with EPPA.

24.     Prior to the phone call ending, Plaintiff asked that Defendants refrain from calling his wife giving Defendant Razskazoff his number instead.

### *November 4, 2011 Collection Call #1*

25.     On or about November 4, 2011, Plaintiff called Defendant AAA by telephone to speak to Defendant Razskazoff collector, which became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

26.     Upon being connected with Defendant Razskazoff he confirmed with Plaintiff that Defendants were reporting the alleged debt to the consumer credit reporting agencies.

27.   Defendant Razskazoff again stated that he could settle the alleged debt.

28.   Defendant Razskazoff then stated that if Plaintiff paid in full, Defendants would remove the alleged debt from his credit report completely.

29.   Defendant Razskazoff stated that if Plaintiff paid only the settlement amount, they would continue to report the alleged debt on his credit report but with a zero balance.

30.   Defendant Razskazoff then stated that the Defendants owned the alleged debt and that Plaintiff could only pay them.

31.   This confused Plaintiff because in the earlier communication, Defendant Razskazoff stated that Defendants did not own the alleged debt.

32.   Concerned about his credit report, Plaintiff again asked about the paid in full notations on his credit reports.

33.   Defendant Razskazoff stated, if Plaintiff paid in full, that he would give his word he would file the papers to clear the collections on Plaintiff's credit reports.

34.   Thereafter, the call ended.

35.   All of the above-described collection communications made to Plaintiff by Defendant Razskazoff and other collection employees employed by Defendant AAA, were made in violation of numerous and multiple provisions of the

FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(10), and 1692f, amongst others.

### *November 4, 2011 Collection Call #2*

36.   On or about November 4, 2011, Plaintiff again called Defendant AAA by telephone to speak to Defendant Razskazoff collector, which became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

37.   Plaintiff, being very concerned about his credit rating asked for something in writing stating this would be completely removed from his credit if he paid in full.

38.   Defendant Razskazoff again said he would give his word he would file the paper to clear the collection from Plaintiffs credit reports.

39.   Plaintiff gave Defendant Razskazoff his work fax number in anticipation of receiving something in writing regarding the alleged debt.

40.   Thereafter the call ended.

### *November 4, 2011 AAA Dunning Letter*

41.   On or about November 4, 2011, Defendant AAA's collector, Defendant Razskazoff, contacted Plaintiff by fax in an effort to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

42. Defendant Razskazoff's fax contained nothing regarding the payment in full credit reporting conversation.

43. Defendant Razskazoff's fax accompanied a letter signed by Defendant Ryans, a similar letter dated November 2, was later received by Plaintiff.

44. Defendants letter demanded payment in full.

45. Among other things in the letter, Defendants threatened that if Plaintiff did not promptly pay the debt in full, Defendants would recommend that legal action be commenced, a writ of execution may be issued, and a garnishment summons, writ of attachment or other court ordered supplementary proceeding may also be invoked.

46. The letter closed by stating that if legal action was necessary, all legal fees may be added to the alleged debt.

47. This dunning letter was intended to create a false sense of urgency and intimidate Plaintiff in to paying the alleged debt.

48. This dunning letter, faxed to Plaintiff by Defendant AAA's collector, Defendant Razskazoff and signed by Defendant Ryans, failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692g(a)(3), namely, by failing to provide Plaintiff a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

49. This dunning letter, faxed to Plaintiff by Defendant AAA's collector, Defendant Razskazoff and signed by Defendant Ryans, failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692g(a)(4), namely, by failing to provide Plaintiff a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

50. This dunning letter, faxed to Plaintiff by Defendant AAA's collector, Defendant Razskazoff and signed by Defendant Ryans, failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692g(a)(5), namely, by failing to provide Plaintiff a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

51. All of the above-described collection communications made to Plaintiff by Defendant Razskazoff and other collection employees employed by Defendant AAA, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5) amongst others.

*November 8, 2011 Collection Call*

52.   On or about November 8, Defendant AAA's collector, Defendant Razskazoff, again contacted Plaintiff's wife by telephone in an effort to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

53.   Defendant Razskazoff called Plaintiff again on wife's phone despite Plaintiff specifically requesting that Defendant Razskazoff call only Plaintiffs phone.

54.   Defendant Razskazoff demanded to know if Plaintiff was going to settle the alleged debt.

55.   Plaintiff stated that he was working on it but needed to put the pieces together as he was confused over how this situation arose because he never received any communications from EPPA.

56.   Defendant Razskazoff, dismissing Plaintiffs statement, stated that he needed to collect inquiring into Plaintiffs timeline.

57.   Plaintiff stated that he did not know.

58.   Defendant Razskazoff again reiterated that he needed to collect and threatened to turn the matter over to an attorney.

59.   Defendant Razskazoff then stated that Plaintiff had until Friday.

60.   Defendant Razskazoff continued by stating that if Plaintiff didn't pay by Friday, Defendant Razskazoff's "hands were tied" or words to that effect.

61. Plaintiff, surprised and angered by this comment, asked what Defendant Razskazoff meant by that statement.

62. Defendant Razskazoff again threatened that he would turn the matter over to an attorney.

63. Thereafter the call ended.

64. All of the above-described collection communications made to Plaintiff by Defendant Razskazoff employed by Defendant AAA, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(10), and 1692f, amongst others.

### November 10, 2011 Plaintiff's Disputation & Validation Letter

65. On or about November 10, 2011, Plaintiff faxed and mailed a letter to Defendants.

66. Among other things, Plaintiff disputed that he owed Defendants for this alleged debt.

67. Plaintiff also requested validation of the disputed alleged debt.

68. Plaintiff has yet to receive any validation of the alleged debt.

### November 14, 2011 Collection Calls

69. On or about November 14, 2011, Defendant AAA's collectors again attempted to contact Plaintiff by telephone.

70. Plaintiff's wife received at least two calls on her cellular telephone from Defendants.

71. The first call came in from telephone number (612) 287-6100 at 4:32PM.

72. The second call came in from telephone number (612) 287-6122 at 5:40PM.

73. These calls were made to Plaintiff's wife's cellular telephone despite repeated requests that Defendants not call her.

74. These calls were made despite Plaintiff disputing and requesting validation of the alleged debt.

75. These calls were made without Defendants providing such validation.

76. All of the above-described collection activity was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692f, and 1692g(b) amongst others.

### *November 15, 2011 Collection Call*

77. On or about November 15, 2011, Defendant AAA's collectors again attempted to contact Plaintiff by telephone.

78. Plaintiff's wife received at least one call on her cellular telephone from Defendants.

79. This call came in from telephone number (612) 287-6100 at 8:42AM.

80. This call were again made to Plaintiff's wife's cellular telephone despite repeated requests that Defendants not call her.

81.   This call was made despite Plaintiff disputing and requesting validation of the debt.

82.   These calls were made without Defendants providing such validation.

83.   All of the above-described collection activity was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692f, and 1692g(b) amongst others.

### *Summary*

84.   All of the above-described collection communications made to Plaintiff by each individual Defendant and other collection employees employed by Defendant AAA, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

85.   The above-detailed conduct by these Defendants of harassing Plaintiff in an effort to collect this alleged debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above-mentioned provisions of the FDCPA.

86.   Plaintiff has suffered damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration and upset, amongst other negative emotions.

*Respondeat Superior Liability*

87.    The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant AAA who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant AAA.

88.    The acts and omissions by these individual Defendants and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant AAA in collecting consumer debts.

89.    By committing these acts and omissions against Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principal, Defendant AAA.

90.    Defendant AAA is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA in their attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

91.    Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

92.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93.    The foregoing acts and omissions of each Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

94.    As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each Defendant:

### COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

Dated: November 17, 2011

Respectfully submitted
**BARRY, SLADE & WHEATON, LLC**

By: **s/Christopher S. Wheaton**
Christopher S. Wheaton, Esq.
Attorney I.D.#0389272
2701 University Avenue SE, Suite 209
Minneapolis, Minnesota 55414
Telephone: (612) 379-8800
Facsimile: (612) 605-2102
cwheaton@lawpoint.com

csw/ko

**Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA       )
                                ) ss

COUNTY OF _Hennepin_     )

Pursuant to 28 U.S.C. § 1746, Plaintiff Lowell Wagoner, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _November_ _16_, _2011_
                          Month          Day         Year

_[signature]_
                                               Signature